## ST. LOUIS EXPANDED METAL FIREPROOFING COMPANY, Appellant, v. HALLIWELL CEMENT COMPANY, Respondent.

### Kansas City Court of Appeals, March 4, 1907.

CONTRACTS: Performance: Demand: Delivery: Modification. A contract for delivery of certain cement consisting of letters and telegrams is construed and held that the plaintiff should have made demand for the delivery of the cement within the time designated by the contract since there was no modification of the original contract as to the time of the delivery.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

AFFIRMED.

*T. Percy Carr* for appellant.

(1) Where a vendor has contracted to deliver goods at or within a specified time, the vendee is not required to make a demand for the delivery of the goods within such time as a condition precedent to a recovery on the contract. Mount v. Lyon, 49 N. Y. 552; Vail v. Rice, 5 N. Y. 155; Stillwell v. Bowling, 36 Mo. 310; Barrett v. Browning, 8 Mo. 689; Kingsland v. Iron Co., 29 Mo. App. 538. (2) Even where (as is not the case here) the contract to deliver goods is upon condition that the buyer shall give notice or make demand for delivery within a specified time, such demand is dispensed with when the seller notifies the buyer at or before the time for commencing delivery that it is unable to deliver. Fischer v. Dow, 72 Tex. 432; Foster v. Leeper, 29 Ga. 294; Sears v. Conover, 34 Barb. 330; Boyle v. Guysinger, 12 Ind. 273; Jaybourn v. Seymour, 53 Minn. 105; Kester v. Reynolds, 6 Hun 626; Delameter v. Miller, 1 Cow. 75; Huffcutt & W., Amer. Cases on Contracts, 561. (3) Where a contract has been postponed at the request of either party, such postponement operates as a mere forbearance, and either party may thereafter insist upon performance at any time. Benjamin on Sales (Bennett's Ed.) sec. 688, p. 706. (4) Where a seller is prepared to deliver the goods at the proper time and desires to terminate his liability to deliver under the contract, he must tender or offer to deliver the goods, and give the buyer an opportunity to accept or refuse to accept them under the contract. Hammon on Contracts, sec. 435, p. 873; Anson on Contracts (18th ed.), 285; Lawson on Contracts, sec. 416, p. 451. (5)    Even

where a party has a legal right to rescind a contract, he must, in order to do so, give the other party clear and unequivocal notice, and he must act promptly at the proper time and not wait until a demand is made to perform. Mfg. Co. v. Mfg. Co., 100 Mo. 335; Melton v. Smith, 65 Mo. 315; Taylor v. Short, 107 Mo. 384; Key v. Jennings, 66 Mo. 370; Hart v. Handlin, 43 Mo. 175; Dougherty v. Stamps, 43 Mo. 243; Estes v. Reynolds, 75 Mo. 563; Robinson v. Siple, 129 Mo. 222.

*Porterfield & Conrad* for respondent.

(1) A buyer must recover, if at all, either upon contract of sale as originally made or upon a modification thereof. He cannot recover upon both. Henning v. Ins. Co., 47 Mo. 425; Lanitz v. King, 93 Mo. 519; Sutter v. Raeder, 149 Mo. 309. (2) Where demand is a condition precedent to delivery, it must be made before the seller is in default. Benjamin on Sales (7th Ed.), sec. 679; Posey v. Scales, 55 Ind. 282; Mechem on Sales, sec. 1130; Weill v. Metal Co., 182 Ill. 128; Calvin v. Weedman, 50 Ill. 311; Kunkle v. Mitchell, 56 Pa. St. 100; Hicking v. Hamilton, 158 Pa. St. 107; Norringer v. Wright, 115 U. S. 203; Ford v. Dyer, 148 Mo. 528. (3) In cash sales the buyer must tender the contract price before the seller can be treated as in default. Benjamin on Sales (7 Ed.), page 953; Lawrence v. Everett, 11 N. Y. Sup. 881; Speyer v. Colgate, 67 Barbour 192; Nelson v. Plimton, etc., Co., 55 N. Y. 480. (4) In order to be effective the modification of a contract must appear clearly, unconditionally and unequivocally. Utley v. Donaldson, 94 U. S. 47; Scott v. Davis, 141 Mo. 225; Ford v. Dyer, 148 Mo. 528; Mfg. Co. v. Mfg. Co., 100 Mo. 325; Fullerton v. Dalton, 58 Barb. 236; Lamar v. Craddox, 5 Col. Ct. of App. 203; Hayne v. Mackey, 44 Kas. 277; Brinkman v. Huey, 42 La. Ann. 108; Robbins & Farrell v. Estes, 58 Mo. App. 585; Stix v. Roulston, 88 Ga. 743. (5) Time is the essence of mercantile con-

tracts. Norringer v. Wright, 115 U. S. 203; Orange
Growers' Ass'n v. Yeomans, 161 Mo. 203; Wall v. Cold
Storage Co., 112 Mo. App. 659.  (6)  A party is not
relieved of his contract by accident or inevitable neces-
sity. Beattie v. Coal Co., 56 Mo. App. 221; Davis v.
Smith, 15 Mo. 325; Brinkerhoff v. Elliot, 43 Mo. App.
185; Clark v. Furnace Co., 21 Mo. App. 58; McQuiddy
v. Brannock, 70 Mo. App. 585.

BROADDUS, P. J.—The plaintiff is a St. Louis
corporation and defendant is a Kansas City corporation.
The suit is for damages for a failure of the defendant
to deliver certain cement which plaintiff alleges defend-
ant failed to deliver as provided by the contract between
the parties.  The cause was submitted to the court on
the evidence and the court at the instance of plaintiff de-
clared as a matter of law that it was entitled to recover
and the finding and judgment were accordingly so en-
tered.  Defendant filed a motion for a rehearing which
was sustained and the plaintiff appealed.

The plaintiff's business was the construction of
fireproof concrete floors in large modern buildings. The
defendant was a dealer in Portland cement and mate-
rials of a similar nature.  The plaintiff had a contract
for work in the Dwight Building which was to be erected
in Kansas City, Missouri.  The evidence as to the con-
tract consisted of letters and telegrams.  The plaintiff
began the correspondence with the letter dated March
12, 1902, at St. Louis, viz.:

"Kindly quote us by wire tomorrow lowest price on
600 to 1,000 barrels of Portland cement specified by
Mr. Smith for the fireproofing of the Dwight Building
to be erected in your city.  We have no copy of the speci-
fications in our office this evening, therefore do not know
what brand (or brands) of cement is required." On the
next day defendant sent the following telegram in an-
swer to said letter as follows: "Atlas two, Iola one

seventy-five, either acceptable to architect." And on the same day wrote to plaintiff the following letter: "We have your letter of March 12th and wired you as follows (above telegram copied into letter). This wire we hereby confirm. I myself went over to the architect's office and looked over the specifications and found that the cement required for the floor construction may be either Iola or Atlas, and also found that the cement to be used in laying up the fireproof partitions was to be the Ft. Scott cement. If you wish to figure on that we will make you a price of 75 c. per barrel of 265 lbs. on the Ft. Scott cement, delivered in wagonload lots on the job. Hoping you will be successful in landing this contract, we are," etc. Signed by "Ned Halliwell, Vice-Pres. and Sec'y."

On May 6, 1902, plaintiff wrote as follows: "Wire lowest price two thousand barrels Iola Portland delivered in business district Kansas City during summer and fall." Defendant in answer wired: "Two dollars, fifteen cents per barrel off for prompt acceptance." On the same day plaintiff wired: "Accept for about two thousand barrels, one eighty-five. See letter." The letter dated on the same day reads: "Your telegram of this date quoting, 'Two dollars, fifteen cents per barrel off for prompt acceptance,' received, and we have answered as per confirmation enclosed. Our treasurer, Mr. D. E. Garrison, Jr., will return to the city on the 10th or 11th inst., and will write your formal acceptance. We have given you preference on this order over other parties quoting the same price. This cement will be wanted for the Dwight Bldg., Kansas City, for delivery during summer and early fall."

On the same day defendant wrote: "We have your letter of to-day asking for a price on 2,000 barrels of Iola Portland cement, to which we have replied, $2.00 per barrel and 15 c. per barrel off for prompt acceptance. Since sending the above wire, we have received

yours which reads as follows, 'Accept for above two thousand barrels, one eighty-five, see letter,' and will prepare *ourselves accordingly.*" On the next day defendant wrote plaintiff thanking it for the preference given, etc.

On July 22, 1902, the defendant wrote as follows: "The demand for Portland cement has become so great that all of the manufacturers have not only raised their prices quite a good deal, but are not giving us any-. where near the amount of cement we require. We would not be able to fill your orders for Iola cement at any price. There is the slightest possibility that the market may open up, and that we may be able to do better, but we have very grave doubts of this. There are two or three new Portland mills being built and under consideration in this territory, and some of them say that they will be in the market before a very great while, but this we have no assurance, and could not count on it." On the next day plaintiff wrote: "We have yours of the 22nd inst., but as we have not written you on the subject of Portland cement since placing our order with you for the Dwight Bldg., your city, cannot understand the object of this present communication. Please let us hear further from you on the subject and oblige." The defendant on the next day replied as follows: "We have your favor of July 23, and in reply will say that our communication to you of the 22, was intended to inform you that we would be unable to let you have any Portland cement or any kind for your work on the Dwight Bldg. at any price. The manufacturers have not given us anything like the cement we require, and they also raised the prices anywhere from 25 c. to $1.00 a barrel. Hoping that our inability to let you have any cement will not inconvenience you to any great extent, we remain." On July 26th, plaintiff wrote: "We acknowledge receipt of your letter of July 24th, and regret that you are unable to deliver us Iola Portland cement as per our contract for the Dwight Building. Such being

the case, we will secure the cement at as low a price as possible from others, and in time to prevent damages from delays to us on the building, so as not to entail avoidable loss to us, or in turn to you."

On July 28th defendant wrote: "I have been absent from the city for the past two months, and upon my return this morning I find your letter of the 25th, and was quite surprised of the controversy that had come up. My son who had taken my place during my absence, handled the correspondence, and did not exactly seem to understand our agreement with you. The facts are that all of the Portland cement factories are crowded with orders and refuse to accept orders for any quantity of cement, and have also advanced their prices. This, however, will cut no figure as far as our contract with you is concerned, and while it may not be possible for us to give you the Iola Portland cement, when you get ready for the cement on the Dwight Bldg., we will do our utmost to keep you supplied, and should it be necessary for you to buy elsewhere, if you will co-operate with me before you make purchase, I will see that you do not lose any money by so doing. I do not think it will be necessary for you to buy anywhere else, yet there are times when other dealers would sell to contractors, for less money than they would to their competitors, consequently I want you to consult me, and work jointly in the matter of purchasing a sufficient quantity to fill our contract with you. If I had been at home in the first place, I should not have lead you to believe that we intended to repudiate the contract with you. That has never been characteristic of our house. My son, not thoroughly understanding the situation, thought he was doing right in the matter. I wish you would kindly advise us about when you expect to start this work, and about what quantities you will use per day after you have started, and we will use our best efforts to have

enough in stock to keep you going. Regretting that there was any occasion for this letter, and hoping to hear from you by return mail, I am," etc. Signed, "Walter S. Halliwell, Pres."

On July 29th, plaintiff wrote: "Yours of the 28th received and your explanation is entirely satisfactory. We were greatly surprised to receive your son's letter of the 22nd, and could hardly believe that your company would try to repudiate a contract made and entered into with us to furnish us cement at $1.85 per barrel for Dwight Bldg. We wrote Messrs. Hucke & Sexton, general contractors for the Dwight Bldg., asking when they will be ready for us to start on fireproofing work, and have their reply this morning in which they state that the deliveries will commence on the steel work for the building Sept. 15th, and we judge from this that we will be able to commence our work about Oct. 15th, and will take at the rate of 250 barrels per week thereafter until we have taken the quantity covered by our order. If you desire we will cast over the cement field and see what price we can secure on Iola or other high-grade American Portland for October and November delivery. We realize that the cement mills are behind, or holding back on orders for a purpose, and that in order not to be disappointed in deliveries orders have to be placed thirty or sixty days ahead. Awaiting your reply, we remain," etc.

On July 30th, defendant wrote: "I have your favor of July 29th, and in reply will say that I would be very glad to have you look around and see what prices you can get on high-grade Portland cement for the Dwight Building, but please do not close any contract until hearing further from me."

On the 31st of July, plaintiff wrote: "In reply to your letter will say that we have an offer to-day on Illinois cement, Universal Brand, for Dwight Building, at $2.30 per barrel, in sacks, f. o. b. cars Kansas City, Octo-

ber and November delivery. Please advise if we shall take advantage of this offer, and oblige."

On August 1st, defendant wrote: "In reply to your favor of July 31st, will say that we do not deem it advisable for you to enter into contract for the Universal Brand of cement. We will manage some way to take care of you when you are ready for the material."

On April 13, 1903, eight months and twelve days from said last-named date plaintiff wrote as follows: "Referring to our contract with you to furnish us Iola Portland cement for the fireproofing of the Dwight Building, wish to say that we are starting to put in our centering at this time and will be ready to take cement within three weeks from date. We will wish delivery made of 400 bbls. at first and will use at the rate of 400 bbls. every other week, commencing with May 4th. We trust this will be ample notice to enable you to furnish us cement promptly at the time needed." On April 16, 1903, defendant wrote declining to deliver the cement, claiming that its contract required such delivery in the summer and fall of 1902.

There was other correspondence between the parties in reference to the matter, which however is unimportant to consider in determining the question at issue. The defendant having declined to deliver the cement mentioned in the contract, plaintiff bought elsewhere at a higher price and demanded of the defendant the difference between the two prices, which defendant refused to pay. The plaintiff then brought this suit to recover such difference. It seems to us that plaintiff under the testimony was not entitled to recover as a matter of law, as there was no dispute as to the facts, and that therefore the action of the court in awarding a new trial was right.

The letters and telegrams, in which is embodied the contract, were unquestionably that defendant was to deliver a certain brand of cement to plaintiff at the

Dwight Building during the summer and fall of 1902. It is true that during the absence of the president and treasurer of defendant company, his son, who was acting for him in his absence, wrote plaintiff that defendant would not be able to comply with its contract, but the father when he returned and assumed charge of the business, after he had learned what his son had written to defendant promptly disavowed his action and notified plaintiff that defendant would stand by its contract. The subsequent correspondence of the parties goes to show that defendant's said president and treasurer notified plaintiff that there were doubts about its ability to comply with the contract and suggesting that plaintiff ascertain at what price it could buy from other dealers such cement, as it was probable that it could buy of such dealers at better terms than defendant could. Subsequently, as shown by its letter of July 31, 1902, plaintiff notified defendant that it had an offer for cement at $2.30 per barrel. To which defendant replied on August 1, 1902, advising plaintiff not to enter into a contract for its purchase and said, "We will manage to take care of you when you are ready for the material." To this plaintiff, as we have seen, made no reply, but in April of the next year, more than eight months thereafter, demanded of defendant the cement under the contract. The plaintiff's position is that it was the duty of defendant to have delivered the cement within the time fixed by the contract without demand of plaintiff and having failed to do so, it is liable. Plaintiff has cited authorities in support of its position, but they have no particular application.

The contract in question provides that during a certain period of time, to-wit, during the summer or fall of 1902, the defendant would deliver a certain quantity of cement to plaintiff at the Dwight Building to be delivered at such times and in such quantities as plaintiff's necessities required. This was well understood by both

parties and was clearly so expressed in the contract. Under the contract, it was therefore the duty of plaintiff to notify defendant when he required the material and how much.   Defendant could not know when plaintiff would require the cement.   Plaintiff did not know, as it was awaiting the progress of the construction of the building before it could construct its part of the work.   There was nothing in the correspondence between the parties that goes to show that defendant was to deliver the cement except during the time mentioned. And there was no modification of the contract.   As we have seen, the last letter written by defendant on August 1, 1902, notified plaintiff that defendant would stand by the contract and "manage to take care of you (plaintiff) when you are ready for the material." There was nothing in this letter nor in any of the correspondence up to that time to indicate any modification of the contract as to the time of delivery.

The cause is affirmed.   All concur.